# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Marisa Budwick, Special Agent with the Federal Bureau of Investigation, being duly sworn, deposes and states under penalty of perjury that the following is true to the best of my information, knowledge and belief.

1. I am a Special Agent with the Federal Bureau of Investigation, and have been since 2009. I am currently assigned in Boulder, Colorado, at an office within the FBI's Denver Division. As part of my training, I received seventeen weeks of investigative training at the FBI Academy in Quantico, Virginia. Since completing training, I have participated in numerous criminal investigations, which have utilized physical and electronic surveillance, financial analysis, interviews, surreptitious recordings, undercover operations, search warrants, arrests, informants, seizure and analysis of computer information and various other techniques. I have investigated terrorism, firearms, financial crime and money laundering. I have also assisted in investigations of criminal violations related to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt and possession of child pornography.  I also investigate criminal violations related to the communication of threats and hoaxes, in violation of Title 18, United States Code, Section 844(e), 875(c) and 1038.  As part of my training and experience, I have reviewed images containing child pornography in a variety of formats (such as digital still images and video images) and media (such as digital storage devices, the Internet, and printed images).  I have also reviewed similar digital media relating to the communication of threats and hoaxes.

2. Because this affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause to believe that CHRISTOPHER FASSIH violated Title 18, United States Code, Sections 2252(a)(2) and (4) and 2252A(a)(2) and (5); Title 18, United States Code, Section 875(c); Title 18, United States Code, Section 844(e), 875(c) and 1038(a)(1) (the "Subject Offenses").

3. The information contained within the affidavit is based on my training and experience, as well as information imparted to me by other law enforcement officers involved in this investigation.

## RELEVANT STATUTES

4. This investigation concerns alleged violations of offenses relating to material involving the sexual exploitation of minors.  18 U.S.C. §§ 2252(a)(2) and (4) and 2252A(a)(2) and (5) prohibit a person from knowingly possessing or accessing sexually explicit images (child pornography) with the intent to view them as well as receiving or possessing in interstate or foreign commerce, or by using any facility or means of interstate or foreign commerce, any visual depiction of minors engaging in sexually explicit conduct (child pornography).

5. This investigation also concerns the interstate communication of threats and the communication of bomb hoaxes.  18 U.S.C. § 875(c) prohibits the transmission in interstate commerce a communication containing "any threat to . . . injure the person of another."  18 U.S.C. § 844(e) prohibits the use of instruments of interstate commerce to "willfully make[] any threat, or maliciously convey[] false information knowing the same to be false, concerning an attempt to alleged attempt being made, or to be made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building . . . by means of

1

fire or an explosive." 18 U.S.C. § 1038(a) makes it unlawful to "convey false or misleading information under circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place that would constitute a violation of," among other things, 18 U.S.C. § 844.

## DEFINITIONS

6. "Child Pornography" includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct).

7. "Visual depictions" includes prints, copies of visual images, developed and undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

8. "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

## PROBABLE CAUSE

### Summary of the Investigation

9. My investigation has revealed than an individual named Christopher FASSIH made numerous telephonic bomb threats from Colorado to police stations around the country on July 5, 2021. I also believe that FASSIH downloaded child pornography from the internet onto his cellular telephone.

### Washington D.C. Metro Police Bomb Threats

10. I have reviewed information received from the Washington D.C. Metro Police Department ("MPD") and learned that on or about July 5, 2021, MPD's Sixth District main station received a telephone call from an unknown person stating "I'm going to blow up the station if you don't give me money in the next 30 minutes." The male caller, who I believe to be FASSIH, called from a telephone number ending in 6751 (the "6751 Phone").

11. In response to this call, members of the MPD canvassed the Sixth District station and did not locate any explosive devices.

12. Also on or about July 5, 2021, MPD's Seventh District received a phone call from the 6751 Phone in which a male caller, who I believe to be FASSIH, stated: "There is a guy in the station and he stole our product. We placed explosives around the station."

13. In response to the call described in paragraph 10, *supra*, the MPD Seventh District station was immediately evacuated, and explosive detection dogs and bomb technicians were

dispatched to the station. Multiple roads around the station were closed and a command post was set up. Ultimately, no explosives were located.

14. Members of the MPD began investigating these calls. MPD learned that the cellular provider for the 6751 Phone identified the customer as "Christopher Fassih" with an address in Ohio. Location information from the phone's provider placed the phone in Denver, Colorado at a particular hotel on July 5, 2021.

15. On or about July 5, 2021, an MPD detective (the "MPD Detective") attempted to reach FASSIH at the 6751 Phone via phone call and text messages. Later on July 5, 2021, FASSIH, using the 6751 Phone, texted the MPD Detective back and engaged in multiple text communications with the MPD Detective. Among other things, in sum and substance, FASSIH explained that he was part of an international mafia group and wanted to extricate himself from that group. FASSIH believed that members of this group would kill him. FASSIH also told the MDP Detective that he had used TOR[1] to download child pornography on his phone.

16. On July 5, 2021, FASSIH called the MPD Detective and told the MPD Detective that he was in front of the Ft. Collins police department. FASSIH said that he had made over 60 phone calls to various law enforcement agencies in the United States, including the MPD. FASSIH said his aim was to do "extreme things" to make himself "an enemy of the United States . . . like a terrorist." He said that he had stockpiled "CP," which I believe to be a reference to child pornography. FASSIH stated that he wanted to do the "worst things [he] could think of without . . . physically hurting anyone" in an effort to get arrested so he would be put in "ADX Florence." The MPD Detective urged FASSIH to go inside to the Ft. Collins police station and turn himself in to an officer.

17. On July 6, 2021, the MPD Detective called FASSIH. Shortly thereafter, FASSIH was contacted by Ft. Collins police officers.

Boston Police Department Bomb Threat

18. I have reviewed information received from the Boston Police Department ("BPD") and learned that on or about July 5, 2021, a male caller using the 6751 Phone, who I believe to be FASSIH, called District 6 at BPD and stated, in sum and substance: "I am trying to help you, we surrounded the station with explosives because an inside guy took our product and you are in trouble." In response this call, officers searched the perimeter of the relevant BPD police station and did not locate any explosives.

19. Also on or about July 5, 2021, a male caller using phone number the 6751 Phone, who I believe to be FASSIH, called District B-3 at BPD and stated, in sum and substance: "you have 30 minutes to free his friends or else. The building is surrounded by bombs." In response to this call, officers searched the perimeter of the relevant BPD police station and did not locate any explosives.[2]

---

[1] I am aware that TOR stands for "The Onion Router." TOR is software that enables individuals to access the darknet, which is one way in which individuals can access illicit materials, such as child pornography.

[2] The BPD report states that the 6751 Phone belongs to "Pacific Phone and Gas company" in San Francisco. As noted in paragraph 14, *supra*, and paragraph 21, *infra*, however, other police departments determined the phone belongs to FASSIH.

3

.

## Cleveland Division of Police Bomb Threat

20. I have reviewed information received from the Cleveland Division of Police ("CDP") and learned that on or about July 5, 2021, a male caller using the 6751 Phone, who I believe to be FASSIH, called CDP's 3rd District and stated, in sum and substance: "You have 30 minutes until the bomb goes off." CDP's 2nd and 4th Districts received the same phone call at around the same time on July 5, 2021.

21. CDP began investigating and learned that the 6751 Phone belongs to "Christopher R. Fassih" in Ohio. CDP also learned that the phone was, on July 5, 2021, located in Denver, Colorado.

22. Based on the calls described in paragraph 20, *supra*, CDP searched all three relevant CDP Districts and found no explosive devices.

## Miami Police Department Bomb Threat

23. I have reviewed information received from the Miami Police Department ("Miami PD") and learned that on or about July 5, 2021, a male caller using the 6751 Phone, who I believe to be FASSIH, called Miami PD's Central Station and stated, in sum and substance, that if he did not receive his money in half an hour, he would blow up the station. FASSIH further stated that he had placed "explosive devices" around the station.

24. In response to the call described in paragraph 23, *supra*, Miami PD's Central Station was searched on the interior and exterior by bomb detection dogs. No explosive devices were located.

## Child Pornography

25. As described in paragraph 17, *supra*, uniformed Ft. Collins police officers made contact with FASSIH outside of the Ft. Collins police station and walked with him inside the station. FASSIH stated that he wanted help and wished to turn himself in. FASSIH confirmed that his name is "Christopher Fassih."

26. Once FASSIH was inside the police station, he spoke with a Ft. Collins detective (the "Ft. Collins Detective"). From the Ft. Collins Detective, I understand the following:

    a. FASSIH told the Ft. Collins Detective that he was a member of an international mafia and that he is a trained assassin for the group. FASSIH explained his belief that the only place that he would be safe from the mafia is ADX Florence. FASSIH stated that he is not a violent person and was attempting to commit crimes that would not hurt anyone.

    b. FASSIH showed the Ft. Collins Detective a screen on his (FASSIH's) phone. On this screen, the Ft. Collins Detective saw text messages between FASSIH and the MPD Detective. Based on the Ft. Collins Detective's description of these text messages, I believe that they are the some of the same text messages described in paragraph 15, *supra*.

    c. The Ft. Collins Detective asked FASSIH about the child pornography that FASSIH had mentioned to the MPD Detective. FASSIH stated that he had downloaded child pornography and then handed his (FASSIH's) phone to the Ft. Collins Detective. On the screen, the Ft. Collins Detective saw approximately 20-25 thumbnail-sized photos of what appeared to be child pornography. In particular, and among other things, the Ft. Collins Detective recalls seeing:

        i. A photograph of a prepubescent minor female, who was fully nude on her hands and knees. The female's genitals and anus were visible to the camera. The female did not have any pubic hair. The photograph appears to have been designed to elicit a sexual response in the viewer.

        ii. A photograph of a prepubescent minor female, who was fully nude on her back on a bed with her arms and legs spread. The female did not have any pubic hair and had undeveloped breasts. The photograph appears to have been designed to elicit a sexual response in the viewer.

27. After viewing the photographs described in paragraph 26.c, *supra*, the Ft. Collins Detective kept the phone and turned it off.

28. Subsequent to the Ft. Collins Detective's conversation with FASSIH described in paragraph 26, *supra*, FASSIH was placed on a mental health hold at a hospital in Ft. Collins.

29. I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

                                                                        *s/ Marisa Budwick*
                                                                        Special Agent Marisa Budwick
                                                                        Federal Bureau of Investigation

Sworn to before me this 7th day of July, 2021

_____
Hon. Scott T. Varholak
United States Magistrate Judge

Affidavit reviewed and submitted by Andrea Surratt, Assistant United States Attorney.